*State ex rel. Jacob Krejsa v. Board of Education of Cleveland, et al.

1. Construction of Section 3982, Revised Statutes.

Section 3982, of the Rev. Stat., relating to boards of education, is to be construed with sec. 3985, and it is not intended that the action contemplated in sec. 3982, should be taken in violation of reasonable rules which may have been adopted by the board under and in pursuance of sec. 3985.

2. Rule Adopted by a Board of Education is Binding Upon it.

Where, under the authority given by sec. 3985, the board of education had adopted a rule requiring that a resolution providing for a change of text-books should be referred to a committee on text-books, and should not be acted upon within four weeks from its introduction, such rule is reasonable and binding upon the board of education.

3. Change of Text-Books.

Where the board of education, having adopted such a rule, passed a resolution providing for a change of text-books upon the same evening it was introduced, and without referring it to a committee, and without having legally suspended such rules, a peremptory writ of mandamus will not be allowed to enforce such resolution on application of a parent having a child who is a pupil, especially where one of the parties to the contract is not a party to the action.

MANDAMUS. Reserved to Lucas county.

BY THE COURT.

The relator in his petition sets forth that the defendant, the Board of Education, at a regular meeting held on Monday, June 20, 1887, a quorum of said board being present, adopted the following resolution:

By Mr. Peets:

"That the 'Standard' series of readers and arithmetics be adopted for exclusive use in the schools of the grammar grade and the classes of the high school grade in need of a text-book in advanced arithmetic, according to the terms offered by the representatives of said Standard Publishing Company herewith submitted :—

"CLEVELAND, O., June 30, 1887.

"To the Honorable Board of Education, Cleveland, O.

"GENTLEMEN: We would most respectfully submit for your consideration the gradual introduction and exchange of our readers and arithmetics for those now in use in your schools.

"We will exchange a higher book of our series for a lower one of the series now in use, after the pupil has furnished said lower book, no matter what its condition may be, on the following liberal terms:

"New Standard second reader, for old first reader now in use, 20c.

"New Standard third reader, for old second reader now in use, 25c.

"New Standard fourth reader, for old third reader now in use, 35c.

"New Standard fifth reader, for old fourth reader now in use, 40c.

"New Standard elementary arithmetic, for old primary intellectual or practical now in use, 32c.

"New Standard complete arithmetic, for any arithmetic now in use, 42c.

"In this way pupils are not compelled to obtain new books until they are needed by actual promotion in the schools, and thousands of dollars will be saved while the exchange is going on.

---

* This case was dismissed by consent of parties, March 3, 1891.

"The books at retail, to the pupils while introduction is going forward, and so long as the books are used, shall not exceed the following prices:

| | |
|---|---:|
| "New Standard First Reader | $0 18 |
| "New Standard Second Reader | 30 |
| "New Standard Third Reader | 42 |
| "New Standard Fourth Reader | 48 |
| "New Standard Fifth Reader | 60 |
| "New Standard Arithmetics: | |
| "Elementary | 42 |
| "Complete | 60 |

"For such supplies as the board may desire to purchase for indigent pupils, or at any time when 'free books' can be legally introduced in the schools, the lowest wholesale terms will be granted, and nothing in this proposition shall be so construed as to interfere with the introduction of 'free books' whenever the board is authorized to do so. We further agree to take the stock of books now on hand from the dealers, and supply our own without loss to them.

"The demand so long made for fresh reading matter will be met by this gradual introduction; and a satisfactory arithmetic for the high school will be furnished without extra cost. Respectfully submitted,

                                "THE STANDARD SCHOOL BOOK COMPANY,
                                                                "ST. LOUIS, MO.
"By GEORGE A. ROBERT, W. A. MAYNARD, Agents."

The relator alleges further that on the 18th day of July, 1887, at a regular meeting of the board, the following resolution was adopted, viz.:

"That the Standard first, second, third and fourth readers be adopted for exclusive use in the primary grades of the schools in place of Appleton's first, second, third and fourth readers now in use in those grades, and that the Standard elementary and complete arithmetics be adopted for exclusive use in the primary and grammar grades of the schools in place of Ray's primary intellectual and practical arithmetic now in use; and that the introduction take place as rapidly as possible under the gradual introduction plan, and according to the terms submitted by the agents of the Standard School Book Company on June 20, and this evening already received and filed."

Relator further alleges, that upon the opening of the fall term of the schools, September 5, 1887, he purchased for one of his children, a scholar legally in attendance upon said school, certain "Standard" school-books so adopted for the use of said scholars in said schools, and that the defendant, Lewis W. Day, the superintendent of schools, and the teachers under him where said scholar attended, under and by direction of said Board of Education, refused to allow said scholar to use said books; and he prays the court that a writ of mandamus issue, commanding said defendants, and each of them, to allow the orator's child, and all other pupils in the public schools of said city, to use said " Standard " series of books as text-books, so long as they shall continue to attend those grades of said school in which reading and arithmetic are required to be taught, or show cause to the contrary:

The defendant, the Board of Education, among other defenses, states that it had adopted as one of the rules for its government the following rule:

"63—Any resolution proposing a change of text-books used, or course of study pursued, in the public schools shall be referred to the committee on text-books, and shall not be acted upon in less than four weeks from the time of its introduction."

And it avers, that said rule was violated in adopting the resolutions of June 20, 1887, and July 18, 1887, set forth in relator's petition in this: that neither of these resolutions was referred to the committee on text-books, but each of them was acted upon in less than four weeks from the time of its introduction, each being passed upon the evening on which it was introduced; and it therefore says that neither of said resolutions was ever legally adopted.

It further says that another of said rules adopted by said board, was the following :—

"48—For the general transaction of business the ordinary parliamentary rules shall be observed by the members and enforced by the president ; and in case any disputed question shall arise, Cushing's Manual shall be taken as authority."

And that there was at all times no rule adopted or in force by the said board, providing for the suspension of any of the rules of the board, except as the rule for such suspension of the rules is furnished by Cushing's Manual, that Cushing's Manual provides that a rule can only be suspended by general consent and by unanimous vote. And it avers that said rules were not regularly suspended by said board, in that they were suspended by a majority only of the members of the board, and not by all the members of the board, nor all the members present. And for that reason, it says, the foregoing resolutions were not properly adopted.

It also says another rule of the board was rule No. 64, as follows :—

"Whenever any new text-books shall be adopted by the board to the exclusion of another already in use, it shall be obligatory on the publisher, or his agent, to exchange the former for the latter, for the period of two months, without cost to those pupils who may be provided with the latter ; and it shall be the duty of the superintendent and the principals to see that this condition is fulfilled."

It says all of the said rules were at that time well known to said Standard School Book Company and its agents. It further says that a controversy having arisen between it and said Standard School Book Company in regard to said rules, it, on the 19th day of September, 1887, " resolved, that the readers and arithmetics then in use in said schools, be continued in all the grades of the schools as heretofore, and that the superintendent of instruction be and is hereby directed to give the principals and teachers the necessary instructions in regard to the use of the books, in accordance with this resolution."

Wherefore the defendant prays that the peremptory writ of mandamus prayed for in the petition may be refused.

The reply of the relator admits the existence of the rules aforesaid, and says that upon the 20th day of June, 1887, and the 18th day of July, 1887, the rules of the board were duly suspended at the time of passing the resolutions set forth in relator's petition.

The first question to be determined by the court is whether the resolutions set forth in the petition, which are made the basis of the application for a writ of mandamus, were properly and legally adopted by the Board of Education.

The Board of Education was composed of twenty members. Neither the resolution of June 20, nor the resolution of July 18 was referred to the committee on text-books, and each of them was acted on in less than four weeks from the time of its introduction, being, in fact, in each instance passed on the evening of its introduction, under what purported to be in each instance a suspension of the rules. The suspension of the rules having been voted on the 20th of June, by a vote of fourteen to three, and on the 18th of July by a vote of eleven to five, it is claimed that this was an improper and illegal action. A rule of the former board had provided expressly that the rules might be suspended by a vote of two-thirds of all the members of the board. This rule was not adopted by the new board ; and the only rule on the subject was No. 48, already set forth, providing that for the general transaction of business, the ordinary parliamentary rules should be observed, and in case any disputed question arose, Cushing's Manual should be taken as authority. Cushing's Manual, laying down the general rules of deliberative assemblies, and being the standard adopted by the rule No. 48, lays down in rule 21, that in dispensing with a rule, or suspending it, if there is no express provision on the subject, it can only be done by general consent. Rule 164 of the same book says :—

"It is usual, in the code of rules adopted by deliberative assemblies, and especially legislative bodies, to provide that a certain number exceeding a majority, as two-thirds or three-fourths, shall be competent to the suspension of a rule in a particular case.   Where this is not provided, there seems to be no other mode of suspending or dispensing with a rule than by general consent."

The same Manual, which is high authority on parliamentary law, in rule 316, defines the term "general consent":—

"The term 'general consent,' as used in parliamentary practice, denotes the unanimous opinion of the assembly, when their opinion is expressed informally and not by means of a vote.   Whenever, therefore, it is said that the general consent of the assembly is necessary to the adoption of any measure, it is to be understood that if the question is proposed informally, no objection must be made to it, or that if proposed in a formal manner, the vote in its favor must be unanimous."

It will be noticed that the suspension of rule No. 63 by the Board of Education, on each occasion, was in direct violation of the rules thus adopted by it. It is said, however, that the action of the Board of Education was in compliance with sec. 3982, Rev. Stat., which reads as follows :—

" A majority of the Board of Education shall constitute a quorum for the transaction of business ; upon a motion to adopt a resolution authorizing the purchase or sale of property, either real or personal, or to employ a superintendent, teacher, janitor or other employe, or to elect or appoint an officer, or to pay any debt or claim, or to adopt any text book, the clerk of the board shall call publicly the roll of all the members composing the board, and enter on the record required to be kept, the names of those voting 'aye,' and the names of those voting ' no'; if a majority of all the members vote 'aye,' the president shall declare the motion carried, and upon any motion or resolution, any member of the board may demand the yeas and nays, and thereupon the clerk shall call the roll, and record the names of those voting aye and those voting no."

This section is to be construed with sec. 3985, which authorizes each board to make such rules and regulations as it may deem expedient and necessary for its government.   We do not construe sec. 3982 as intending that in the transaction of so large a share of its business as is there indicated, the board is to be governed by no rules.   The purpose of sec. 3982 is, we think, not to determine when a motion shall be put when made ; but to provide that on such important subjects the vote shall be taken in the careful manner there directed.   It is certainly a wise and proper precaution by this board, and has been so found universally to provide for the consideration of measures so important as the adoption of text-books proposed to be adopted, by rules providing for reference to a committee, and time for careful consideration.   This is specially true of so large a district as that controlled by the Board of Education of the city of Cleveland, where the number of pupils is said to be .over 30,000.   And we think it was improper for the Board of Education to act upon the main resolutions which are the foundation of the claims in the petition, in the hasty manner in which it did, unless its rules were properly suspended.   We think that suspension should have been made in the manner laid down by Cushing's Manual, adopted by Rule No. 48 of this board.

It is said that on several occasions the board had undertaken to suspend its rules by a majority vote.   This is true ; but we do not approve the act because repeated.   If the rules are to be suspended by a bare majority, they have no force as rules.   No motion can be adopted by the minority, and the general purpose of parliamentary rules is to restrain the hasty action of a bare majority. One purpose of such rules is to prevent just such misunderstandings and confusion as arose in this case from the too hasty action of the board.

It is a well established rule of law that a peremptory writ of mandamus will only be allowed where the right is clear. From the record in evidence in this case, it appears that there is a controversy between the Board of Education and the

Standard Book Company in regard to the terms of agreement between them; it being claimed by the Board of Education, that its rule No. 64 was known to the agents of the Standard Book Company, and was understood by both parties to be a part of the agreement at the time it was made. The Book Publishing Company afterwards, however claimed that the exchange of books was not to be governed by that rule, and that, in fact, under the terms of its proposition, that rule had no application to the agreement. It was on account of the differences growing out of this controversy that the Board of Education finally decided to continue the use of the books that it had previously adopted.

From the testimony before us, it is difficult to determine that the Standard Book Publishing Company is right in its claim as to the terms of the agreement, even if the resolutions were legally adopted, and in its understanding of the meaning of rule No. 64, and for this reason also, we think the questions between the parties should be decided in the ordinary manner, and in an action to which the Standard Book Publishing Company is a party, and not in a proceeding of this nature.

For the reasons we have given, the peremptory writ of mandamus is refused and the petition dismissed.

Henderson, Kline & Tolles, for the relator.

A. T. Brinsmade, city solicitor, Judge E. J. Blandin, and J. P. Dawley, for the defendants.